UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SOTORIOS GEORGAKOPOULOS, | ) | 1:04CV1436 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| TRACY TYSON-PARKER, | ) | |
| Acting Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

The petitioner Sotorios Georgakopoulos ("Georgakopolous")has filed a petition for a writ of habeas corpus regarding his 1999 felony convictions for engaging in a pattern of corrupt activity and related offenses, in the Cuyahoga County, Ohio, Court of Common Pleas. (Doc. 1.) Georgakopoulos raises two grounds for relief in his petition:

1. Court did not follow sentence set forth in Plea Agreement.

2. Court erred by sentencing more than statutory minimum.

(Doc. 1, §§12.A.-12.B.) The respondent has filed an answer and return of writ, but the petitioner has not responded with a traverse. (Doc. 8.)

I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

[Georgakopoulos was indicted] on 107 counts.  The first count alleged that appellant had violated R.C. 2923.32, engaging in a pattern of corrupt activity.  The remaining counts detailed the alleged pattern of that corrupt activity:  appellant and three of his family members conducted a criminal enterprise over a period of a year and a half that consisted of committing the following offenses:  21 counts of theft of money in amounts between $5,000 and $100,000, R.C. 2913.02;  21 counts of gambling, R.C. 2915.02;  21 counts of operating a gambling house, R.C. 2915.03;  42 counts of money laundering, R.C. 1315.55; and one count of possessing criminal tools, R.C. 2923.24.

Following the period of discovery, the parties negotiated a plea agreement.  The prosecutor outlined its terms for the trial court at appellant's plea hearing:  in exchange for appellant's plea of guilty to the first count, which was a first-degree felony, along with 24 of the others, the state would dismiss the remaining counts and also would recommend imposition of a sentence of the minimum amount of incarceration for the most serious offense, i.e., a total of only three years.

The prosecutor proceeded to outline the potential penalties involved with regard to the offenses to which appellant would plead guilty.  As to engaging in a pattern of corrupt activity, the length of incarceration ranged from the minimum three to the maximum ten years.  As to the three counts of money-laundering, third-degree felonies, the length of incarceration ranged from one to five years.  As to the 21 counts of operating a gambling house, all misdemeanors, appellant could be jailed for up to six months.

The prosecutor reiterated, however, that as a part of the plea agreement, "at the time of sentencing * * * [t]he State would recommend that the minimum sentence be imposed on Count one [and the third-degree felony] Counts, and the minimum sentence be concurrent."  In response to the trial court's subsequent query, both defense counsel and appellant acknowledged that the prosecutor accurately had set forth the "understanding" that they all had reached.

The trial court thereupon conducted a model colloquy with appellant in strict compliance with Crim. R. 11.  During this exchange, appellant indicated that no "promises" had been made to him with regard to the change in his plea, he understood the rights he was relinquishing, and he was aware of the potential penalties involved.

The trial court specifically asked appellant whether he understood that if sentenced "to the maximum term allowable by law," he faced "a total

possible period of 25 years in prison." Appellant responded, "Yes." Appellant further indicated his understanding that, alternatively, the trial court had the authority to impose the terms concurrently rather than consecutively. Finally, the trial court asked appellant, "Do you understand there is no promise of a particular sentence?" Again, appellant answered, "Yes."

Appellant at that time entered his plea of guilty to the 25 counts as agreed, which the trial court accepted. After noting that it had "been advised there [was] a recommended sentence," the trial court scheduled appellant's sentencing hearing.

The hearing took place four days later. At its outset, the trial court remarked that "the Defendant and the State ha[d] made a recommendation" to it regarding sentence, but reminded the parties that it was "not bound by the recommendations," but would "consider" that fact.

Defense counsel proceeded to address the court. He offered reasons for the trial court to accept the recommendation, in part by asserting that appellant lacked a "prior record" and that the other family members also were culpable in the criminal enterprise. Counsel concluded by stating his "hope" that the suggested sentence "would be prevailing upon the Court."

The trial court then invited the prosecutor to place upon the record the police investigation of the case. According to his account, the detectives discovered that appellant had been "running Las Vegas nights" at local meeting halls which had been advertised as events given on behalf of many different charities; however, the charities appellant listed either eventually became defunct, or remained unaware of the use of their names, or received only a small fraction of the money appellant collected. Appellant's enterprise, on the other hand, had deposited into its bank account over a million dollars; while appellant paid his "workers" some cash, the detectives had been unable to "find" a large portion of the money he had obtained through the criminal activities. The prosecutor indicated that appellant's operation "hurt" legitimate charities and those people they served.

During his address to the court, defense counsel indicated that appellant had accepted responsibility for his actions, and reminded the court that the state and the detectives had agreed with the recommended sentence. Nevertheless, in sentencing appellant, the trial court addressed him with the following observations:

> "I do believe that a minimum sentence, which was recommended to the Court, is inappropriate for the crime you committed.
>
> "Clearly this was organized criminal activity.
>
> "Mr. Georgakopoulos, you are a financial predator.  There is no other way to describe you, except to say that you preyed upon people.  You are a greedy man.  You are a thief.
>
> "You are someone who used your wit and cleaverness [sic] to steal a great deal of money from people.
>
> "This is a state where * * * [s]omeone who steals from a store goes to prison from two years to five years as a minimum sentence.
>
> "So three years, I think, is outrageous.  You have personally profited.
>
> "And I'm guessing that you used illegal property through a business to pay your bond, which I believe was $100,000.
>
> "You had no other activity, as far as employment, other than this.
>
> "Clearly, for these reasons, the Court believes that the minimum sentence of three years is improper.  It does not adequately punish you and does not certainly protect the citizens of the State of Ohio from your predator [sic] nature."
>
> The trial court thereupon ordered appellant to serve concurrent sentences as follows:  six years on count one, three years on each of the counts of money laundering, and six months on each of the counts of operating a gambling house.

(Doc. 8, RX 13, at 2-7; <u>State v. Georgakopoulos</u>, 152 Ohio App.3d 288, 290-292, 787 N.E.2d 674, 675-677 (Ohio Ct. App. 2003)).

Georgakopoulos, through his appellate counsel, raised two assignments of error on his direct appeal:

> 1.  The trial court, after agreeing to accept a negotiated plea bargain, erred by not following the negotiated plea at sentencing.

> 2. The sentencing court errer [*sic*] when it sentenced the defendant to six years instead of the statutory minimum three years without any findings consistent with R.C. 2929.14(B).

(Doc. 8, RX 11.)  On March 27, 2003, the Ohio Court of Appeals affirmed Georgakopoulos's convictions.  (Doc. 8, RX 13; State v. Georgakopoulos, 152 Ohio App.3d 288, 787 N.E.2d 674 (Ohio Ct. App. 2003)).

On July 30, 2003, the Ohio Supreme Court denied Georgakopoulos leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 8, RX 15; State v. Georgakopoulos, 99 Ohio St.3d 1513, 792 N.E.2d 200 (2003)).

Georgakopoulos filed this petition for a writ of habeas corpus on July 27, 2004.  (Doc. 1.)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

The grounds put forward by Georgakopoulos apparently allege violations of Ohio law.  The question properly before this federal habeas court is whether the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Federal habeas relief is not available for a claimed violation of state law, thus any alleged violation of Ohio law is not properly before this court.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

III.  PROCEDURAL DEFAULT

The respondent argues that the petitioner's federal claims are barred by procedural default, because they were never fairly presented to the state courts. (Doc. 8, at 14-18.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).

This court does not have jurisdiction to consider a federal claim in a habeas petition which was not fairly presented to the state courts.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs v. Mohr, 265 F.3d 407, 415 (6th Cir. 2001).  The Sixth Circuit has stated:

> A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts.  This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented":  (1) reliance upon federal cases employing constitutional analysis;  (2) reliance upon state cases employing federal constitutional analysis;  (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001) (citing Franklin v. Rose, 811 F.2d 322, 325-326 (6th Cir. 1987)).  See also

Hicks v. Straub, 377 F.3d 538, 552-554 (6th Cir. 2004), cert. denied, 125 S.Ct. 1653 (2005). To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

Georgakopoulos did not frame either of the grounds for his state appeal as a federal constitutional issue. (Doc. 8, RX 11.) He relied solely on state law arguments, with a single exception: Georgakopoulos cited United States v. Holman, 728 F.2d 809 (6th Cir.), cert. denied, 469 U.S. 983 (1984), for the assertion that "once the court approves a plea agreement, its ability to deviate from it is limited." Id. at 6. That issue in the Holman decision, however, was based on the Federal Rules of Criminal Procedure, not on constitutional grounds. See Holman, 728 F.2d at 811-812. See generally Fields v. United States, 963 F.2d 105, 107-108 (6th Cir. 1992) (after 1987 amendment of Fed. R. Crim. P. 11, Holman no longer good law); United States v. Kemper, 908 F.2d 33, 35 (6th Cir. 1990) (same). The petitioner's state appeal did not rely on federal constitutional analysis, nor did his claims implicate a constitutional right.

Because Georgakopoulos did not fairly present any federal claims to the state courts, he is procedurally barred from seeking federal habeas relief on those claims. The petition should be denied on that basis. Even if the court were to consider those claims on the merits, the petition would be denied.

IV. TRIAL COURT'S SENTENCE VARIES FROM PLEA AGREEMENT

The first ground of the petition is "Court did not follow sentence set forth in Plea Agreement."  The "supporting facts" are as follows:

> Defendant entered into a Plea Agreement based on an agreed sentence and dismissal of some pending charges.  Defendant was not informed of either the Court's or the Prosecution's decision to seek a sentence far in excess of the plea agreement.  The increased sentence was not supported by a presentence investigation or other facts to which Defendant could have prepared a response.

(Doc. 1, §12.A.)  The respondent argues that this claim must be dismissed because it fails to state a violation of clearly established federal law, but rather states a claim under Ohio law only.  (Doc. 8, at 9-12.)

The Supreme Court has ruled that a guilty plea which was made voluntarily, knowingly, and intelligently is constitutionally valid.  DeSmyther v. Bouchard, No. 03-1419, 2004 WL 1921182 (6th Cir. Aug. 25, 2004) (per curiam), cert. denied, 125 S.Ct. 1642 (2005) (citing Brady v. United States, 397 U.S. 742 (1970)).  Regarding habeas review of state plea bargains, the Sixth Circuit has stated:

> [A] federal court reviewing a state court plea bargain may only set aside a guilty plea or plea agreement which fails to satisfy due process. . . . If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.

DeSmyther, 2004 WL 1921182 (quoting Frank v. Blackburn, 646 F.2d 873, 882 (5th Cir. 1980), cert. denied, 454 U.S. 840 (1981)).

The petitioner does not allege that his plea violated due process.  The colloquy in the record demonstrates that the petitioner was advised of the possible consequences of his plea:

> . . . [Georgakopoulos] indicated that no "promises" had been made to him with regard to the change in his plea, he understood the rights he was relinquishing, and he was aware of the potential penalties involved.
>
> The trial court specifically asked appellant whether he understood that if sentenced "to the maximum term allowable by law," he faced "a total possible period of 25 years in prison." Appellant responded, "Yes." Appellant further indicated his understanding that, alternatively, the trial court had the authority to impose the terms concurrently rather than consecutively. Finally, the trial court asked appellant, "Do you understand there is no promise of a particular sentence?" Again, appellant answered, "Yes."
>
> Appellant at that time entered his plea of guilty to the 25 counts as agreed, which the trial court accepted.

(RX 13, at 4; Georgakopoulos, 152 Ohio App.3d at 290-291, 787 N.E.2d at 675-676). Rather, the petitioner claimed that the court "breached" the plea agreement, and was bound to accept the prosecutor's recommended sentence. See generally doc. 1, §12.A.; doc. 8, RX 11, at 6-7 (brief to state appellate court).

The Supreme Court has stated that "[a] criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court." North Carolina v. Alford, 400 U.S. 25, 38 n.11 (1970) (citing Lynch v. Overholser, 369 U.S. 705, 719 (1962)). See, e.g., Hall v. Luebbers, 341 F.3d 706, 715-716 (8th Cir. 2003), cert. denied, 541 U.S. 996 (2004); Molinar v. Newland, 151 F.Supp.2d 1120, 1124 (N.D. Cal. 2001). "A plea bargain standing alone is without constitutional significance." Hall, 341 F.3d at 716 (quoting Mabry v. Johnson, 467 U.S. 504, 507-08 (1984)).

A court may reject a plea in its exercise of sound judicial discretion. Santobello v. New York, 404 U.S. 257, 262 (1971). Thus, acceptance or rejection of a

plea agreement is the prerogative of the court.  See, e.g., United States v. Crumpton, 27 F.3d 567, 1994 WL 233592, at *1 (6th Cir. 1994) (TABLE, text in WESTLAW).

Habeas relief is only available if the petitioner demonstrates that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Williams, 529 U.S. at 412-413; Lewis, 497 U.S. at 780; Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001) (per curiam).  The petitioner has not established that the state court decision regarding his sentencing, in relationship with the plea bargain, was contrary to, or involved an unreasonable application of, clearly established federal law.  The petition should not be granted on this ground.

## V.  SENTENCE BEYOND STATUTORY MINIMUM

The second ground of the petition is "Court erred by sentencing more than statutory minimum."  The "supporting facts" are as follows:

> Defendant had not served a prior sentence.  Therefore, under R.C. 2929.14(B) the Court was obligated to articulate on the record a basis for deviating from the statutory minimum.  The Court did not make such findings to support the increased sentence.

(Doc. 1, §12.B.)  Again, the respondent argues that this claim must be dismissed because it states a claim under Ohio law only.  (Doc. 8, at 12.)

State law interpreting Ohio Rev. Code § 2929.14(B) is unsettled in the wake of "sentencing enhancement" cases such as Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004).  See, e.g., State v. Le, No.

84429, 2005 WL 488378, at *4 (Ohio Ct. App. Mar. 3, 2005) (citing cases); State v. Combs, No. CA2000-03-047, 2005 WL 941133, at *9 n.1 (Ohio Ct. App. Apr. 25, 2005) (citing cases). However, the petitioner rests his argument solely on an alleged misapplication of the Ohio statute, not on any federal constitutional grounds. See generally doc. 1, §12.B.; doc. 8, RX 11, at 9-10 (brief to state appellate court).

A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action. Howard v. White, No. 03-1042, 2003 WL 22146139, at *2 (6th Cir. Sept. 16, 2003); Kipen v. Renico, No. 02-1742, 2003 WL 21130033 (6th Cir. May 14, 2003). Federal habeas relief is not available for a claimed error of state law. Lewis, 497 U.S. at 780; Howard, 2003 WL 22146139, at *2.

Again, the petitioner has failed to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Williams, 529 U.S. at 412-413; Lewis, 497 U.S. at 780. The petition should not be granted on this ground.

## VI. SUMMARY

The petition for a writ of habeas corpus should be denied because Georgakopoulos did not fairly present his federal claims to the state courts, thus they are procedurally barred.

Further, he has failed to demonstrate that the state court decisions on his guilty plea and sentencing were contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United States.

## RECOMMENDATION

It is recommended that the petition be denied.

Dated:   Dec. 5, 2005                    /s/ Kenneth S. McHargh   
　　　　　　　　　　　　　　　　　　　Kenneth S. McHargh  
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).